Robert Paul BROMLEY, Petitioner,

v.

**Christine Frances BROMLEY, Respondent.**

No. Civ. 98–MC–0180.

United States District Court, E.D. Pennsylvania.

Dec. 15, 1998.

---

Linda Shay Gardner, Bethlehem, PA, for plaintiff.

Susan Peikes Gantman, West Conshohocken, PA, for defendant.

## OPINION

VAN ANTWERPEN, District Judge.

### I. INTRODUCTION

Petitioner, Robert Paul Bromley resides in England and has brought this action pursuant to the Hague Convention on the Civil Aspects of International Child Abduction of October 25, 1980, and the United States Congress in the International Child Abduction Remedies Act, 42 U.S.C. §§ 11601–11610. Petitioner now asks this court for various forms of relief concerning his rights of visitation and custody of his children who reside with the Respondent, Christine Frances Bromley, in the United States. We held oral argument with both counsel present on December 7, 1998. We issued an order following oral argument which dismissed this action. This opinion explains the basis for our issuance of that order. For the reasons set forth below, we find that this court lacks jurisdiction over the relief requested and we dismiss Petitioner's claim without prejudice.

### II. FACTS

Petitioner and Respondent were married on September 25, 1985, and divorced on May 7, 1991. Petitioner is the father of two children, Lynn Kathryn Bromley (born 10/21/87) and Harrison Alexander Paul Bromley (born 10/8/89). According to the divorce decree, Respondent has legal custody of the children, while Petitioner has visitation rights during weekends, summers and holidays. *See* Peti-

tioner's Ex. A at 4. At oral argument, both counsel conceded that the Respondent has sole custody of the children. At some point after the divorce, the Petitioner moved to England and the Respondent moved to Pennsylvania.

The rest of the facts in the record are in dispute. According to the Petitioner, he has repeatedly been denied access to his children, including by telephone. Pet. at ¶¶ 7–8, 11–13, 17–18, 20, 25–29.[1] Respondent has also allegedly failed to provide Petitioner with her current address, telephone number and school information relating to the children. *d.* Respondent denies the majority of the allegations made by the Petitioner. *See* Resp't Answer.[2] Respondent asserts that she has not created obstacles to Petitioner's rights of access to custody. *Id.* at ¶¶ 7–8. Respondent also claims that Petitioner has always had the current address and telephone number for the children. *Id.* at ¶ 12.

Petitioner has attempted to locate his children through the National Center for Missing and Exploited Children ("NCMEC"), which acts as the Central Authority for locating children within the United States.[3] *See* Pet. at ¶¶ 16–19; Petitioner's Exs. B and D. However, the communications made through the NCMEC and discussion between counsel of both parties have apparently led nowhere in resolving this dispute.

## III. DISCUSSION

The Hague Convention on the Civil Aspects of International Child Abduction of October 25, 1980, S. Treaty Doc. No. 99–11 (1985) ("the Convention"), reflects a concern over international parental child abduction. Congress promulgated the International Child Abduction Remedies Act ("ICARA"), in order to implement the provisions of the Convention in the United States. *See* 42 U.S.C. §§ 11601–11610. Congress made it clear that the provisions of ICARA are "in addition to and not in lieu of the provisions of the Convention." 42 U.S.C. § 11601(b)(2).

The Convention's goals, set forth in Article 1, are "to secure the prompt return of children who have been wrongfully removed or retained in any Contracting State," and "to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in other Contracting States." The Convention is designed to protect the legal custody rights of the non-abducting parent by restoring the status quo ante and returning the child to the country of his or her habitual residence. Under Article 12 of the Convention, judicial and administrative authorities are given the power to order such a return only when the removal of the child has been "wrongful." Article 3(a) has defined "wrongful" as a removal or retention that is in breach or violation of parental custody rights.

Pursuant to ICARA, federal courts have original jurisdiction over matters arising under the Convention according to 42 U.S.C. § 11603(a): "[t]he courts of the States and the United States district courts shall have concurrent original jurisdiction of actions arising under the Convention." A number of federal courts have exercised their jurisdiction to implement the cornerstone of the Convention which "is the mandated return of the child to his or her circumstances prior to the abduction if one parent's removal of the child from or retention in a Contracting State has violated the custody rights of the other, and is, therefore, 'wrongful.'" *See, e.g., Feder v. Evans–Feder,* 63 F.3d 217, 221 (3d Cir. 1995); *Friedrich v. Friedrich,* 78 F.3d 1060, 1064 (6th Cir.1996); *Ohlander v. Larson,* 114

---

**1.** Petition for Access under Article Twenty One Hague Convention filed on November 23, 1998, is hereinafter referred to as "Pet. at ¶ __."

**2.** Respondent's Answer with Affirmative Defenses and New Matter to Petition for Access under Article 21 Hague Convention filed on December 4, 1998, is hereinafter referred to as "Resp't Answer at ¶ __."

**3.** 42 U.S.C. § 11606(a) provides that: "[t]he President shall designate a Federal agency to serve as the Central Authority for the United States under the Convention." President Reagan, by Executive Order No. 12648, 53 Fed.Reg. 30637, designated the Department of State as the Central Authority. The Department of State subsequently promulgated regulations designating the NCMEC as the organization to perform the operational functions with respect to applications under the Convention. *See* 22 C.F.R. § 94.6.

F.3d 1531, 1534 (10th Cir.1997). A review of case law reveals, however, that no federal court has yet addressed the right of access to children under the Convention as contrasted with ordering the return of children.

The issue before us is whether this court has the authority to enforce the rights of access of the Petitioner under the Convention. Petitioner argues that his access and visitation rights to his children may be addressed by this court pursuant to Article 21 of the Convention:

> An application to make arrangements for organizing or securing the effective exercise of rights of access may be presented to the Central Authorities of the Contracting States in the same way as an application for the return of a child.

> The Central Authorities are bound by the obligations of co-operation which are set forth in Article 7 to promote the peaceful enjoyment of access rights and the fulfillment of any conditions to which the exercise of such rights may be subject. The Central Authorities shall take steps to remove, as far as possible, all obstacles to the exercise of such rights. The Central Authorities, either directly or through intermediaries, may initiate or assist in the institution of proceedings with a view to organizing or protecting these rights and securing respect for the conditions to which the exercise of these rights may be subject.

Petitioner requests that this court enforce the terms of his divorce decree which spell out his original access and visitation rights with respect to his children. *See* Petitioner's Ex. A.

■ We believe the rights of the Petitioner may not be addressed by this court because there is no *remedy* under the Convention for obstacles to rights of access absent a "wrongful" removal of a child. Article 21 simply states that the promotion of effective rights of access may be effectuated by appli-

cation to the "Central Authorities," but does not provide the courts with independent authority to remedy such a situation.

■ When interpreting a treaty, we begin with the text of the treaty and the context in which the written words are used. *Eastern Airlines, Inc. v. Floyd,* 499 U.S. 530, 534–35, 111 S.Ct. 1489, 113 L.Ed.2d 569 (1991); *Volkswagenwerk Aktiengesellschaft v. Schlunk,* 486 U.S. 694, 699–700, 108 S.Ct. 2104, 100 L.Ed.2d 722 (1988). Other rules of construction may be used on difficult or ambiguous passages. *Id.* But where the text is clear, as it is here with Article 21, courts have no power to insert an amendment. *Chan v. Korean Air Lines, Ltd.,* 490 U.S. 122, 134–35, 109 S.Ct. 1676, 104 L.Ed.2d 113 (1989). Moreover, the silence of the Convention as to any remedy for access rights is in sharp contrast to Article 12 which clearly provides authority for judicial authorities to order the return of a child "wrongfully" removed. We believe, therefore, that the plain language of the Convention does not provide federal courts with jurisdiction over access rights.[4]

We find additional support for such an interpretation from several sources. In *Viragh v. Foldes,* the court stated that "the Convention does not mandate any specific remedy when a noncustodial parent has established interference with rights of access." 415 Mass. 96, 612 N.E.2d 241, 247 (Mass. 1993). Without a breach of custody rights, the Convention cannot be invoked because removal cannot be considered "wrongful." *Id.; see also Ivaldi v. Ivaldi,* 288 N.J.Super. 575, 672 A.2d 1226, 1232 (N.J.Super.Ct.), *rev'd on other grounds,* 147 N.J. 190, 685 A.2d 1319 (N.J.1996). Indeed, in the United Kingdom, Article 21 has been described as toothless because it fails to confer jurisdiction on the British courts to determine matters relating to access. *See Re G,* 3 All E.R. 657 (C.A.1993). Moreover, many commenta-

---

**4.** The United States' Department of State has expressed in its legal analysis of the Convention that access rights "are also protected by the Convention, but to a lesser extent than custody rights." 51 Fed.Reg. 10494, 10513. "Procedurally Article 21 authorizes a person complaining of, or seeking to prevent, a breach of access

rights to apply to the CA [Central Authority] of a Contracting State." *Id.* Article 21 leaves open the possibility that Central Authorities "may initiate or assist in the institution of proceedings." In the present case, the Petitioner had applied to the NCMEC, which is acting as the Central Authority in the United States. Pet. at ¶ 14.

tors have criticized the failure of Article 21 to provide a remedy concerning the access rights of parents.[5]

We also note that at oral argument, Petitioner's counsel presented us with three cases which counsel claimed supported Petitioner's contention that this court has jurisdiction over a claim of access rights under the Convention. We find that two of these cases do not, in fact, support Petitioner's contention.[6] The third case presented by the Petitioner is *Costa v. Costa.* 1 F.L.R. 163 (High Ct.Fam.Div.1992). The High Court of Justice in England expansively discussed Article 7(f) of the Convention as permitting judicial authorities to make arrangements for the exercise of a parent's rights to access. Even if we were to accept this case as authoritative, we would choose not to agree with this interpretation, because it is against the weight of authority and it diverges from the plain language of Article 7(f), which clearly states that the "Central Authorities". are given the authority "to make arrangements for organizing or securing the effective exercise of rights of access." Moreover, the mother in *Costa* had custody of the children and had "wrongfully" removed them from New York to England, subsequently impeding the father's access rights. In the present situation, however, the Petitioner is the party who has voluntarily left the country where his children reside. Even if we were to follow *Costa* and equate access rights with

custody rights, the Petitioner would be unable to show that his children had been wrongfully removed within the meaning of Article 3.[7]

We find, therefore, since the Respondent already has legal custody of the children and has neither "wrongfully" removed nor retained them from the country of their habitual residence, there is no cause of action under the Convention. The proper jurisdiction for this action is a state court that has the full authority to enforce and modify the original Texas divorce decree.

■ Moreover, this court clearly lacks jurisdiction over any other relief requested by the Petitioner. At oral argument, Petitioner's counsel claimed that the present action merely seeks enforcement of the original divorce decree. We note, however, that in the wherefore clause of the Petition, Petitioner seeks far broader forms of relief, including "partial custody." We agree with Respondent's counsel that this type of relief requested by the Petitioner would require modification of existing custody rights. Courts examining international abduction under the Convention have steadfastly refused to consider the merits of any underlying child custody claims in accordance with 42 U.S.C. § 11601(b)(4). *See, e.g., Friedrich,* 78 F.3d at 1063–64; *Rydder v. Rydder,* 49 F.3d 369, 372 (8th Cir.1995); *Feder,* 63 F.3d at 221 n. 5.

■ From a policy perspective, the refusal of federal courts to hear child custody mat-

---

5. *See, e.g.,* Linda Silberman, *Hague Convention on International Child Abduction: A Brief Overview and Case Law Analysis,* 28 Fam.L.Q. 9, 31 (1994); Martha Bailey, *"Rights of Custody" under the Hague Convention,* 11 B.Y.U.J.Pub.L. 33, 35 (1997); *Hague Conference on Private International Law: Report of the Second Special Commission Meeting to Review the Operation of the Hague Convention on the Civil Aspects of International Child Abduction,* Jan. 18–21, 1993, *reprinted· in* 33 I.L.M. 225, 244 (1994); Note, *Access Rights: A Necessary Corollary to Custody Rights under the Hague Convention on the Civil Aspects of International Child Abduction,* 21 Fordham Int'l L.J. 308, 331–347 (1997); Note, *The Hague Convention on the Civil Aspects of International Child Abduction: An Analysis of Tahan and Viragh and their Impact on its Efficacy,* 33 U. Louisville J.Fam.L. 125, 127 (1995); Note, *The Hague Convention on the Civil Aspects of International Child Abduction: Are the Convention's Goals Being Achieved?* 2 Ind.J. Global Legal Stud. 553, 558 (1995).

6. The *Navarro v. Bullock* case is inapposite to Petitioner's argument because it involved a mother who had abducted her children from Spain to California, in breach of the father's rights under a joint custody agreement. 15 Fam. L.Rep. (BNA) 1576 (Cal.App. Dep't Super.Ct.1989). The second case, *Re G,* supports this court's decision as discussed above.

7. The present case is also distinguished from the line of cases, cited by the *Costa* court, that have addressed access rights under the Convention for situations in which a child is removed by the custodial parent in violation of a court order. *See, e.g., C v.. C,* 1 W.L.R. 654 (C.A.1989); *Re H,* 2 F.L.R. 439 (Fam.1990). These courts have held that an order of non-removal is a form of custody rights belonging to the access parent. No court order of non-removal exists in the present case.

ters makes sense. This court finds that the arena of child custody matters, except for the limited matters of international abduction expressly addressed by the Convention, would better be handled by the state courts which are more numerous and have both the experience and resources to deal with this special area of the law. There is a growing trend towards establishing specialized state family courts which avoid a piecemeal approach to domestic relations matters and which instead deal with overall domestic relations problems. Such courts can address not only child custody and visitation, but also important related issues such as child support. We are a court of limited jurisdiction and we traditionally lack jurisdiction over domestic relation matters. *See Solomon v. Solomon,* 516 F.2d 1018, 1021–24 (3d Cir.1975); *Gill v. Gill,* 412 F.Supp. 1153, 1156–57 (E.D.Pa.1976). The rationale underlying this domestic relations exception is a historically ingrained limitation because "domestic relations of husband and wife and parent and child were matters reserved to the States." *Solomon,* 516 F.2d at 1023 (quoting *Ohio ex rel. Popovici v. Agler,* 280 U.S. 379, 383–84, 50 S.Ct. 154, 74 L.Ed. 489 (1930)). We find no reason to deviate from this history and move domestic relations litigation to federal court.

This court, therefore, lacks jurisdiction over the grievances brought by the Petitioner. We have dismissed this action without prejudice, however, so that the parties may proceed in an appropriate state court.