**Jose Antonio TEIJEIRO FERNANDEZ,**
**Petitioner,**

v.

**Janet Ann YEAGER, Respondent.**

**No. 4:00–CV–28.**

United States District Court,
W.D. Michigan,
Southern Division.

Nov. 1, 2000.

Jan Rewers McMillan, Southfield, MI, Robert J. Barnard, Jr., Barnard, Smith & Burness, P.C., Portage, MI, for Jose Antonio Teijeiro Fernandez, plaintiff.

Stuart H. Deming, Inman Deming, LLP, Kalamazoo, MI, for Janet Ann Yeager, defendant.

### *OPINION*

QUIST, District Judge.

On March 13, 2000, Petitioner, Jose Antonio Teijeiro Fernandez, filed a verified Petition for Access to Minor Children Under the Hague Convention on the Civil Aspects of International Child Abduction, October 25, 1980, T.I.A.S. No. 11670, 1343 U.N.T.S. 49, 1983 WL 20353(TIA)(the "Convention" or "Hague Convention") and the International Child Abduction Remedies Act ("ICARA"), 42 U.S.C. §§ 11601 to 11610. In his Petition, Petitioner requested, among other things, that the Court grant him access to his two minor children, who currently reside with Respondent, Janet Ann Yeager, the children's mother and Petitioner's ex-wife. In addition, Petitioner requested that the Court stay the step-parent adoption proceedings in the Kalamazoo County Circuit Court the ("State Proceedings"), captioned *In the Matter of Christina Ruth Teijeiro and Laura Ana Teijeiro*, Case No. F–AD99000134F, during the pendency of this proceeding. On March 15, 2000, this Court entered an Order denying without prejudice Petitioner's request to stay the State Proceedings. Petitioner filed a First Amended Petition on April 5, 2000, one day after Respondent filed her answer to the original Petition.[1] Now before the Court is Respondent's Motion for Dismissal or Summary Judgment.[2]

### *Facts*

Petitioner, a citizen of Spain, and Respondent, a citizen of the United States, were married in Madrid, Spain on July 12, 1985. During their marriage, the parties conceived two children, Cristina Ruth Tei-jeiro, born in Madrid on June 7, 1986, and Laura Ana Teijeiro, born in Madrid on June 26, 1989. Both parties resided in Spain until 1996. In July of that year, Respondent filed for separation in Madrid. Shortly after commencing the separation proceeding, Respondent left Spain with the two minor children and moved to the United States, where she relocated in Kalamazoo, Michigan. On July 15, before Respondent left Spain, a request was made for provisional measures regarding various marital and personal issues. (*See* Order of Provisional Measures (Translation), attached to Complaint Under the Uniform Child Custody Jurisdiction Act, Resp't Supplemental App. Ex. B at 1.) On September 30, 1996, the Spanish court issued an Order of Provisional Measures ("Provisional Order"), which provided: "[t]he attribution of the guardianship and custody of the minor daughters to [Respondent] but exercising jointly both parents the power of attorney." (*See id.*) In addition to awarding custody of the minor children to Respondent, the Provisional Order recognized Petitioner's right of access and provided alternate arrangements for access and visitation if the parties could not agree on those issues, depending on whether the children were living in the United States or Spain. (*See id.*)

On or about October 16, 1996, Respondent filed a complaint in the Kalamazoo County Circuit Court under the Uniform Child Custody Jurisdiction Act in which she requested that the court recognize the Provisional Order, including Respondent's custodial rights set forth in that order, but modify Petitioner's access/visitation rights

---

**1.** Respondent filed a motion to strike the First Amended Petition on April 14, 2000, on the ground that it was filed without leave of court as required by Fed.R.Civ.P. 15(a). Having reviewed the parties' briefs on the issue, the Court concludes that, although leave was not granted, Petitioner erroneously believed that the First Amended Petition was properly filed under Rule 15(a) because Respondent's answer had not yet been filed when Petitioner mailed the First Amended Petition to the Court. While the filing did not comply with Rule 15(a), the Court would have granted leave without question had Petitioner filed a motion for leave. Therefore, the Court will deny Respondent's motion to strike.

**2.** Due to her pending motion to strike, Respondent has not filed an answer to the First Amended Petition. However, Respondent's motion is based upon the First Amended Petition and assumes that leave was filed. (*See* Respondent's Mem. Supp. at 1 n. 1.)

to allow for supervised visitation. (*See* Complaint Under the Uniform Child Custody Jurisdiction Act at 3–4, Resp't Supplemental App. Ex. B.) On October 18, 1996, the circuit court entered an ex-parte order which recognized the Provisional Order, including Respondent's right of temporary custody, and provided that Respondent's address and telephone number be withheld from Petitioner. (*See* Ex-parte Order Recognizing Foreign Order Under the Uniform Child Custody Jurisdiction Act, Resp't Supplemental App. Ex. C.) An amended ex-parte order was entered on December 10, 1996, clarifying that Petitioner was entitled to supervised visitation with the children under the Provisional Order. (*See* Amended Ex-parte Order Recognizing Foreign Order Under the Uniform Child Custody Jurisdiction Act, Resp't Supplemental App. Ex. E.) Copies of the complaint, orders, and other pleadings were served on Petitioner through his counsel in Spain.

On January 20, 1997, the Spanish court entered a decree of separation which provided:

> Both parties agreed that the sole custody of the children Cristina (born June 7, 1986) and Laura (born June 26, 1989) aged 10 and 7 respectively, be granted to the mother, as well as the parental authority be shared by the two parents, as long as the mother would reside in Spain.

> It is clear that every person may decide freely where to reside and if the mother establishes her residence with the children in a country other than Spain, which is the case, in the United States, the relationship between the father and the children will be very difficult, but this does not impede to grant the sole custody to the parent who is deemed to be the most beneficial to the children, being in this case the mother because she was the one who was more devoted to the children, and the father himself considered the mother as suit-

able if she were living in Spain, admitting in confession that she takes good care of them. The new residence of the children and the distance between the parents must be considered in order to establish a new system of right of access more suitable for the present situation, that is described below.

(1/20/97 Decree at 7–8, 1st Am. Pet. Ex. 5.) [3] In addition, the decree provided access for Petitioner as agreed upon by the parties, but failing such an agreement granted Petitioner a minimum of "[t]wo months during the summer holidays of every year; half of the Christmas Holidays and the others of the school holidays calendar, operating with an alternating system." (*Id.* at 9–10.) Subsequently, on January 24, 1997, the Spanish court modified the decree to provide that "The children's traveling expenses for the fulfilment of the rights of access ordered, must be equally shared by the parties . . . ." (1/24/97 Order, 1st Am. Pet. Ex. 6.) One year later, the Spanish court issued another order which stated, "once it is verified that the visitation rights have started, as accorded in Sentence of January 20th 1997, the Court will order the payment of the maintenance owed." (1/12/98 Order, 1st Am. Pet. Ex. 8.)

On May 2, 1997, Respondent filed a Complaint for Divorce and a Petition for Custody and Support and Supervised Visitation in the Kalamazoo County Circuit Court. Copies of the pleadings were served on Petitioner in Spain. (*See* Proof of Service, Resp.'t Supplemental App. Ex. I.) A judgment of divorce was entered by the circuit court on November 3, 1997. The judgment awarded custody of the children to Respondent and provided that "Defendant [Respondent in this case] shall have supervised parenting time with the minor children at a time and place agreed upon by the parties." (Judgment of Divorce at 2, Resp't Supplemental App. Ex. J.) In addition, the divorce judgment pro-

---

**3.** In the "Decision" portion of the decree, the Spanish court expressly ordered that Respon-

dent would continue to have legal custody of the children. (*See* Decree at 9.)

vided that "the residence or domicile of the minor children shall not be removed from the State of Michigan without the prior approval of the judge assigned to this case." (*Id.* at 7.)

On December 3, 1998, the Spanish court issued a Decree of Divorce which specifically acknowledged the Judgment of Divorce issued by the Kent County Circuit Court on November 3, 1997. (*See* 12/3/98 Decree at 19, 1st Am. Pet. Ex. 7.) The Spanish court noted in the decree that "[t]he circumstances of the mother and children are unknown, since she has not appeared before the Court, neither can them [sic] be verified because she has moved to the U.S.A." (*Id.*) In addition, the decree specifically reaffirmed that Respondent had legal custody of the children and that Petitioner had a right of access, "without prejudice of the possibility for the [Petitioner] of visiting the children in the United States." (*Id.* at 21.)

On April 21, 1999, Petitioner filed an application for assistance under Article 21 of the Hague Convention with the Spanish Central Authority. Under section VIII, "Other remarks," Petitioner represented that Respondent obtained custody of the children in both the Provisional Order and the final decree of separation issued by the Spanish court. (*See* Other Remarks at 1, attached to Application for Exercise of Rights of Access, Other Remarks (Translation), attached to Application, 1st Am. Pet. Ex. 4.) Shortly thereafter, the Spanish Central Authority requested assistance from the National Center for Missing & Exploited Children in Arlington Virginia. On December 13, 1999, Respondent's husband filed a petition for step-parent adoption in the Kalamazoo County Circuit Court. On the same day, Respondent filed a supplemental petition in the Kalamazoo County Circuit Court to terminate Petitioner's parental rights. Subsequently, Petitioner retained counsel in the United States and filed this action seeking to enforce his right of access to the children and requesting the Court to stay the State Proceedings.

Petitioner alleges that Respondent has failed to provide him access to the children in violation of the Spanish and Michigan orders. Further, Petitioner alleges that he has been prevented from knowing Respondent's and the children's whereabouts because their address and telephone number were ordered withheld by the circuit court.

### *Motion Standards*

An action may be dismissed if the complaint fails to state a claim upon which relief can be granted. Fed. R.Civ.P. 12(b)(6). The moving party has the burden of proving that no claim exists. Although a complaint is to be liberally construed, it is still necessary that the complaint contain more than bare assertions of legal conclusions. *Allard v. Weitzman (In re DeLorean Motor Co.)*, 991 F.2d 1236, 1240 (6th Cir.1993)(citing *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir.1988)). All factual allegations in the complaint must be presumed to be true, and reasonable inferences must be made in favor of the non-moving party. 2A James W. Moore, *Moore's Federal Practice,* ¶ 12.34[1][b] (3d ed.1997). The Court need not, however, accept unwarranted factual inferences. *Morgan v. Church's Fried Chicken,* 829 F.2d 10, 12 (6th Cir. 1987). Dismissal is proper "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984)(citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)).

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R.Civ.P. 56. The rule requires that the disputed facts be material. Material facts are facts which are defined by substantive law and are necessary to apply the law.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute over trivial facts which are not necessary in order to apply the substantive law does not prevent the granting of a motion for summary judgment. *Id.* at 248, 106 S.Ct. at 2510. The rule also requires the dispute to be genuine. A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.* This standard requires the non-moving party to present more than a scintilla of evidence to defeat the motion. *Id.* at 251, 106 S.Ct. at 2511 (citing *Schuylkill v. Munson,* 14 Wall. 442, 448, 20 L.Ed. 867 (1871)).

A moving party who does not have the burden of proof at trial may properly support a motion for summary judgment by showing the court that there is no evidence to support the non-moving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324–25, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). If the motion is so supported, the party opposing the motion must then demonstrate with "concrete evidence" that there is a genuine issue of material fact for trial. *Id.; Frank v. D'Ambrosi,* 4 F.3d 1378, 1384 (6th Cir.1993). The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Financial Corp. v. Van Sickle,* 967 F.2d 233, 236 (6th Cir.1992)(quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

### Discussion

This case requires the Court to apply the Hague Convention as implemented by ICARA. The Hague Convention was adopted "to secure the prompt return of children wrongfully removed to or retained in any contracting State" and "to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States." Hague Convention, art. 1. Under the ICARA, federal and state courts have concurrent original jurisdiction over actions arising under the Convention. *See* 42 U.S.C. § 11603(a). The United States and Spain are both being signatory nations to the Convention. *See* Hague Convention, 1983 WL 206353(TIA), at *9; *Schroeder v. Vigil–Escalera Perez,* 76 Ohio Misc.2d 25, 32, 664 N.E.2d 627, 631 (1995).

In his First Amended Petition, Petitioner alleged only that he had a right of access to the children. (*See* 1st Am. Pet. ¶¶ 13, 19, 21.) Petitioner also alleged that he filed an Application for Assistance under Article 21 of the Convention, which is specifically limited to enforcement of rights of access. (*See id.* ¶ 3.) Moreover, in his prayer for relief, Petitioner requested that the Court grant him "[a]ccess to the minor children as provided by the Hague Convention and ICARA." (*Id.* at 8.) On the other hand, Petitioner freely conceded that Respondent was granted custody of the children by the Spanish Court. (*See id.* ¶ 13.) In spite of his allegations in the First Amended Petition, Petitioner now takes the opposite tack. That is, Petitioner contends that he had rights of custody immediately before Respondent removed the children from Spain to the United States and, apparently, claims such custody rights continue in effect. (*See* Pet'r Resp. Br. at 6–9, 14.) In addition, Petitioner now claims that he has rights of custody under Convention Art. 5(a) rather than rights of access under Art. 5(b) and seeks return of the children to Spain. (*See id.* at 12.)

The ramifications of Petitioner's allegations regarding his right of access in the First Amended Petition are significantly different from Petitioner's newly asserted claim of custody in his response to Respondent's motion, especially in relation to Petitioner's request for return of the children. The Convention distinguishes between custody rights, which "include rights relating to the care of the person of the child and, in particular, the right to determine the child's place of residence," and

access rights, which "include the right to take a child for a limited period of time to a place other than the child's habitual residence." Hague Convention art. 5. The importance of this distinction lies in the grounds upon which a court may order return of children: "an order of return is available as a remedy only for wrongful removals or retentions, and removals or retentions are wrongful only if they are 'in breach of rights of custody.'" *Croll v. Croll,* 229 F.3d 133, 138 (2d Cir.2000)(quoting Hague Convention, art. 3); *see also* Hague Convention arts. 1, 12; 51 Fed.Reg. 10505 (March 26, 1986)("The removal or retention must be wrongful within the meaning of Article 3, as further clarified by Article 5(a), in order to trigger the return procedures established by the Convention"). In contrast, although "[t]he Convention provides recourse in the event a child is removed from an habitual residence in breach of access rights, ... those remedies do not include an order of return to the place of habitual residence." *Croll,* 229 F.3d 133, 138. Thus, the first issue the Court must address is whether Petitioner has alleged or shown a wrongful removal or retention.[4]

■ Petitioner, as the party asserting a wrongful removal, has the burden of demonstrating by a preponderance of the evidence that Respondent wrongfully removed the children from Spain. *See* 42 U.S.C. § 11603(e)(1)(A); *Friedrich,* 983 F.2d at 1400. Article 3 of the Convention provides:

The removal or the retention of a child is to be considered wrongful where—

(a) it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and

(b) at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.

The rights of custody mentioned in sub-paragraph (a) above, may arise in particular by operation of law or by reason of a judicial or administrative decision, or by reason of an agreement having legal effect under the law of that State.

Hague Convention art. 3. Petitioner contends that Respondent's removal of the children from Spain to the United States was wrongful within the meaning of Article 3 because at the time Respondent left Spain with the children on July 25, 1996, Petitioner had joint custody rights under Article 154 of the Spanish Civil Code, and no custody order was entered until September 30, 1996, over two months after Respondent left Spain. Petitioner asserts that the facts admitted by Respondent in her Answer to the original Petition demonstrate that Petitioner was exercising his custody rights or would have exercised such rights at the time Respondent left Spain.

While it is true that a wrongful removal includes "a removal ... of a child before the entry of a custody order regarding that child," 42 U.S.C. § 11603(f)(2), the Court rejects Petitioner's claim that he had custody of the children because such a claim is contradicted by all of the evidence in the record before the Court, including the orders of the Spanish court as well as Petitioner's own admissions and conduct. In fact, the first time Petitioner even asserted that Respondent removed the children in violation of Petitioner's custody

---

4. Generally, the first issue a court must address in deciding a case under the Hague Convention is the "habitual residence" of the minor children. *See Friedrich v. Friedrich,* 983 F.2d 1396, 1400–01 (6th Cir.1993); *Schroeder* 76 Ohio Misc.2d at 32, 664 N.E.2d at 631. This determination requires that the

court "focus on the child, not the parents, and examine past experience, not future intentions." *Friedrich,* 983 F.2d at 1401. In this case, the parties do not appear to dispute that Spain was the habitual residence of the minor children prior to the time Respondent brought the children to the United States.

rights was in his response to Respondent's motion. Petitioner's allegation in paragraph 8 of the First Amended Petition that Respondent "departed the country with the minor children in 1996 without the knowledge or consent of the Father or the permission of the courts during the pendency of the Separation Proceedings," (1st Am.Pet.¶ 8), fails to sufficiently allege a wrongful removal under Article 3 of the Hague Convention because Petitioner fails to allege that he was exercising custody rights or would have exercised custody rights but for Respondent's removal of the children.

The orders entered by the Spanish court leave no doubt that Petitioner acquiesced to an award of sole custody of the children to Respondent. (*See, e.g.,* 1/20/97 Decree at 7 ("Both parties agreed that the sole custody of the children ... be granted to the mother").) Through a series of various orders issued over three years, the Spanish court reaffirmed the award of sole custody to Respondent and Petitioner's right of access to the children. (*See* Provisional Order ¶¶ 2,3; 12/3/98 Decree at 21.) In addition, those orders indicate that the parties and the court acknowledged Respondent's right to move with the children to the United States. In fact, in the December 3, 1998, Decree, the court specifically recognized that Respondent had moved to the United States and reaffirmed the previous award of legal custody to Respondent. (*See* 12/3/98 Decree at 19–21.)

Apart from the orders of the Spanish court, Petitioner's own conduct and representations conclusively establish that Petitioner had a right of access, not a right of custody. Following Respondent's departure from Spain with the children in July 1996, Petitioner did not take any action with respect to the children for almost three years. On April 21, 1999, Petitioner filed an application with the Central Authority in Spain. In the application, Petitioner did not represent to the Central Authority that he had a right of custody. Rather, Petitioner stated, quite candidly, that Respondent was awarded custody of the children in the Provisional order and in the final decree of separation and that Petitioner was granted a right of access to the children. (*See* Other Remarks at 1, attached to Application for Exercise of Rights of Access (Translation).) Petitioner complained that Respondent had failed to comply with Petitioner's right of access by denying him the ability to keep in touch with his children. (*See id.* at 1–2.) In connection with Petitioner's application, the Spanish Central Authority issued a report in which it stated that the Spanish court "has granted [Petitioner] a right of access regarding his two daughters," which "are not respected by" Respondent. (7/10/2000 Report of the Central Authority, Pet'r Resp. Ex. 3.) Thus, Petitioner's actions and representations are inconsistent with his asserted right of custody.

In light of the evidence in the record demonstrating that Petitioner only has a right of access to the children, Petitioner has failed to create a genuine issue of material fact with respect to his claim that Respondent wrongfully removed the children from Spain. Petitioner's assertion that Respondent's statement in her Answer that she left Spain after Petitioner assaulted her of the presence of their children demonstrates that Petitioner was exercising custody rights must be rejected because it fails to show that Petitioner was exercising custody over the children, especially in light of the overwhelming evidence in the record to the contrary. However, even if Petitioner was able to establish that he was exercising custody rights at the time Respondent left Spain with the children, the evidence conclusively shows that Petitioner consented to or acquiesced in the removal of the children. *See* Hague Convention art. 13(a); *Friedrich v. Friedrich,* 78 F.3d 1060, 1070 (6th Cir.1996)(stating that "acquiescence under the Convention requires either: an act or statement with the requisite formality, such as testimony in a judicial proceeding; a convincing written renunciation of rights; or a consistent attitude of acquiescence over a significant period of time").

■ Having concluded that there was no wrongful removal because Petitioner did not have custody rights, the Court now turns to the question of whether it has jurisdiction to enforce Petitioner's access rights. The Court first addressed this issue in its March 15, 2000, Order denying Petitioner's request to stay the State Proceedings. In that Order, the Court cited *Bromley v. Bromley*, 30 F.Supp.2d 857 (E.D.Pa.1998), as indicating that the Court lacks jurisdiction to enforce Petitioner's rights of access under the Convention. After discussing *Bromley*, this Court stated that it found the *Bromley* court's reasoning persuasive but deferred ruling on the issue of jurisdiction to allow further briefing of the issue. Based upon the parties' briefs and additional review of the issue, this Court agrees with the *Bromley* court's conclusion that federal courts do not have jurisdiction to enforce rights of access under the Convention.

In *Bromley*, the petitioner and respondent were divorced in the United States and the respondent was awarded custody of the parties' two children. Following the divorce, the petitioner moved to England and the respondent moved to Pennsylvania. The petitioner filed a petition under the Convention alleging, as Petitioner does in this case, that the respondent denied him access to his children and that the respondent failed to provide the petitioner with her current address, telephone number, and other information. There was no dispute that the respondent had sole custody of the children. Under those circumstances, the court concluded that it lacked jurisdiction over the petitioner's request for enforcement of his access rights. In reaching its decision, the court examined Article 21 of the Convention, which provides:

An application to make arrangements for organizing or, securing the effective exercise of rights of access may be presented to the Central Authorities of the Contracting States in the same way as an application for the return of a child.

The Central Authorities are bound by the obligations of co-operation which are set forth in Article 7 to promote the peaceful enjoyment of access rights and the fulfillment of any conditions to which the exercise of those rights may be subject. The Central Authorities shall take steps to remove, as far as possible, all obstacles to the exercise of such rights.

The Central Authorities, either directly or through intermediaries, may initiate or assist in the institution of proceedings with a view to organizing or protecting these rights and securing respect for the conditions to which the exercise of these rights may be subject.

Hague Convention art. 21. The court reasoned that because Article 21 is limited to filing an application with the Central Authorities with respect to access rights, it "does not provide the courts with independent authority to remedy such a situation." *Bromley*, 30 F.Supp.2d at 860. In addition, the court observed that "the silence of the Convention as to any remedy for access rights is in sharp contrast to Article 12 which clearly provides authority for judicial authorities to order the return of a child 'wrongfully' removed."[5] *Id.* Finally, the court found additional support for its conclusion in decisions from other jurisdictions, which also concluded that the Convention does not provide any specific remedy for breach of access rights. *See id.* (citing *Viragh v. Foldes*, 415 Mass. 96, 105, 612 N.E.2d 241, 247 (1993)(stating that "the Convention does not mandate any specific remedy when a noncustodial parent has established interference with rights of access"), and *In re G*, 1993 Fam. 216 (P.C.1993)("There are no teeth to be found in article 21 and its provisions have no part to play in the decision to be made by the judge")(opinion of Butler–Sloss, L.J.)).

---

**5.** "The Convention makes plain that unless the petitioner has rights of custody, a court has no authority to order return." *Croll*, 229 F.3d 133, 138.

Petitioner contends that *Bromley* is distinguishable from this case because in contrast to the facts in this case, the children in *Bromley* remained in their habitual residence—the United States—and therefore there was no wrongful removal. This argument must be rejected. As the Court concluded above, there was no wrongful removal even though Respondent removed the children from their habitual residence because Petitioner was not exercising custody rights at the time Respondent moved the children to the United States and Petitioner consented and acquiesced to an award of sole custody of the children to Respondent. Therefore, *Bromley* and this case are virtually indistinguishable with regard to the issue of wrongful removal.

Given the absence of any specific remedy for rights of access, this Court believes that matters relating to access are best left to the state courts, which are more experienced in resolving these issues. As courts of limited jurisdiction, federal courts have traditionally recognized an exception to diversity jurisdiction when an action involves the issuance of a divorce, alimony, or custody decree. *See Ankenbrandt v. Richards,* 504 U.S. 689, 693, 112 S.Ct. 2206, 2209, 119 L.Ed.2d 468 (1992); *Zak v. Pilla,* 698 F.2d 800, 801 (6th Cir.1982)(per curiam). The relief sought by Petitioner in this case comes directly within the "domestic relations exception" because Petitioner is seeking assistance in enforcing his custody rights. While federal courts undoubtedly have jurisdiction under the Convention and ICARA to act in cases where children have been wrongfully removed by ordering their return to their country of habitual residence, access issues, which require the court to weigh the children's interests, the parents' interests, and other familial considerations, are best left to the state courts, "which have both the experience and resources to deal with this special area of the law." *Bromley,* 30 F.Supp.2d

at 862. Petitioner is not left without recourse to protect his right of access because Petitioner may seek relief in the matter pending in Kalamazoo County Circuit Court. That court has previously addressed visitation issues and has jurisdiction to determine the terms and conditions of Petitioner's right of access. Furthermore, the Court is informed that Petitioner is now represented by counsel in the Kalamazoo proceeding.[6]

### Conclusion

For the foregoing reasons, the Court will grant Respondent's motion for dismissal or summary judgment.

An Order consistent with this Opinion will be entered.

---

**6.** "[T]he Convention does not require that a mirror image visitation order be entered," although the visitation order issued by the court in the children's habitual residence should be followed "to the extent practical

....*" Viragh,* 415 Mass. at 111, 612 N.E.2d at 250. Thus, the state court is not prohibited from modifying the conditions of Petitioner's right of access.