Kim WIGGILL, Petitioner,

v.

Tomasz JANICKI, Respondent.

No. CIV.A.2:03–0137.

United States District Court,
S.D. West Virginia,
Charleston Division.

May 20, 2003.

Andrew S. Nason, Esq., Charleston, WV, for Petitioner.

Tomasz Janicki, Scott Depot, WV, Pro se.

## MEMORANDUM OPINION AND ORDER

HADEN, District Judge.

Pending is the motion of Petitioner Kim Wiggill (Wiggill) for a hearing on whether Respondent Tomasz Janicki (Janicki) should pay the costs of a passport so the parties' son can travel from the United States to Swindon, England to visit his mother. Wiggill and Janicki had two children during their marriage, which ended by divorce May 9, 1995 in South Africa. The son, Daniel Thomas Janicki (Daniel), who is the subject of this petition, lives with his father in Teays Valley, West Virginia in this judicial district. According to the Petition, on information and belief, Janicki has custody of Daniel, with Wiggill having the right to spend summers with the child. (Pet.¶ 4.)

The Petition recites there is no Order from any Court concerning the rights of

custody or access for the child, but requests the Court declare Wiggill be permitted to have the summer with her son every year and that the father be required to pay for that transportation. (*Id.* ¶ 11.) Additionally, Wiggill requests the Court require Janicki purchase a plane ticket not later than May 1 of each year, the child leave for England not later than the third week of June each year and return to West Virginia not earlier than the second week of August each summer. (*Id.* ¶ 12.) By Answer, Janicki, who appears *pro se,* filed a letter dated April 10, 2003 stating he had obtained the tickets and attaching the travel confirmation from an internet ticket agent for travel June 12, 2003 from Charleston (CRW) to Philadelphia (PHL) to London Gatwick (LGW) and returning from London via Pittsburgh (PIT) to Charleston, West Virginia on August 14, 2003.

On May 15, 2003 Wiggill moved for a hearing and attached an e-mail from Janicki in which he requested she provide seventy-five dollars ($75.00) for a passport. He said the "court order" and summons [1] did not require a passport, but only a ticket. Wiggill now moves the Court to require Janicki to pay costs of travel including a passport.

The Wiggill Petition is brought under the Hague Convention and requests right of access pursuant to Article 21 of the Convention on the Civil Aspects of International Child Abduction. (Hague Convention on the Civil Aspects of International Child Abduction, done Oct. 25, 1980, reprinted in 51 Fed.Reg. 10,498 (Convention)), as adopted by the International Child Abduction Remedies Act (ICARA),

42 U.S.C. § 11601, *et seq.* ICARA states that its provisions are "in addition to and not in lieu of the provisions of the Convention." 42 U.S.C. § 11601(b)(2). Pursuant to ICARA, federal courts have original jurisdiction over matters arising under the Convention. 42 U.S.C. § 11603(a)("The courts of the States and the United States district courts shall have concurrent original jurisdiction of actions arising under the Convention.") Wiggill's request for a hearing is the first matter to come before the Court in this action. Under Article III of the Constitution, a federal court has limited jurisdiction and must first assure itself of jurisdiction before proceeding in any matter.

The Convention reflects a concern over international parental child abduction. Under Article 12 of the Convention, judicial and administrative authorities are given the power to order a child's return only when the removal of the child has been "wrongful." A removal or retention is "wrongful" if it is in breach or violation of parental custody rights. Convention, art. 3(a). Article 21 addresses parental rights of access, stating: "An application to make arrangements for organizing or securing the effective exercise of rights of access may be presented to the Central Authorities of the Contracting State [2] in the same way as an application for the return of a child." Convention, art. 21, 51 Fed.Reg. at 10,500. Access rights "include the right to take a child for a limited period of time to a place other than the child's habitual residence." Convention, art. 5.

In *Bromley v. Bromley,* 30 F.Supp.2d 857 (E.D.Pa.1998), the district

---

**1.** Presumably Janicki refers to the summons and Petition to which he responded by letter within sixteen days of its service.

**2.** Each State is to name a Central Authority under the Convention. The State Department is the Central Authority for the United States. *See* Exec. Order No. 12,648, 53 Fed.Reg. 30,-637 (Aug. 11, 1988), reprinted in 42 U.S.C. § 11606 (1994).

court thoroughly analyzed the issue whether it had subject matter jurisdiction over claims for right of access. Review of the Convention and particularly Article 21 showed it provided no remedy for obstacles to rights of access absent a "wrongful" removal of a child. *Id.* at 860; *see also Teijeiro Fernandez v. Yeager*, 121 F.Supp.2d 1118, 1123 (W.D.Mich. 2000)(same); *Croll v. Croll*, 229 F.3d 133, 138 (2d Cir.2000)("[A]n order of return is available as a remedy only for wrongful removals or retentions, and removals or retentions are wrongful only if they are 'in breach of rights of custody.'"(quoting Convention, art. 3.)).

In support, the *Bromley* court cited the State Department's legal analysis of the Convention addressing remedies for breach of access rights. The State Department found:

> "Access rights," which are synonymous with "visitation rights", are also protected by the Convention, but to a lesser extent than custody rights. While the Convention preamble and Article 1(b) articulate the Convention objective of ensuring that rights of access under the law of one State are respected in other Contracting States, the remedies for breach of access rights are those enunciated in Article 21 and do not include the return remedy provided by Article 21.

51 Fed.Reg. 10,513. Further support is found in the Convention at Article 21, which states that a petition to enforce access rights is to be presented to the Central Authority, but does not provide for presentation to the judicial authority as found in Article 12. Convention, arts. 12, 21, 51 Fed.Reg. at 10,499–500. The State Department also explained, "In addition to creating a judicial remedy for cases of wrongful removal and retention, the Convention requires each Contracting State to establish a Central Authority with the broad mandate of assisting applicants to secure the return of their children or the effective exercise of their visitation rights." 51 Fed.Reg. 10,511. Again, there is a distinction between judicial remedies for cases of wrongful removal and petitions to the Central Authority for access right violations. As the *Bromley* court articulated, "the silence of the Convention as to any remedy for access rights is in sharp contrast to Article 12 which clearly provides authority for judicial authorities to order the return of a child 'wrongfully' removed." *Bromley*, 30 F.Supp.2d at 860; *see also Janzik v. Schand*, 2000 WL 1745203 (N.D.Ill.2000)(finding no judicial remedy for access right petitions); *Viragh v. Foldes*, 415 Mass. 96, 105, 612 N.E.2d 241, 247 (1993)("the Convention does not mandate any specific remedy when a noncustodial parent has established interference with rights of access"); *Fernandez*, 121 F.Supp.2d at 1125 (same).[3]

Here Wiggill alleges no wrongful removal claims and, in fact, states in her petition that Janicki has the right of custody. Instead, her claim is that she be allowed access to the child for visitation during the summer months. However, the Convention provides the courts no independent authority to remedy this situation. This Court must agree with every federal court that has examined the issue. Federal courts do not have jurisdiction to enforce rights of access under the Convention.[4] *Bromley*, 30 F.Supp.2d at 862; *Fer-*

---

3. Many commentators also have criticized the failure of Article 21 to provide a remedy for access rights of parents. *Bromley*, 30 F.Supp.2d at 861 n. 5 (collecting commentaries).

4. Similarly, in the United Kingdom, Article 21 has been described as "toothless because it fails to confer jurisdiction on the British courts to determine matters relating to access." *Bromley*, 30 F.Supp.2d at 860 (citing *Re G*, 3 All E.R. 657 (C.A.1993)).

*nandez*, 121 F.Supp.2d at 1125; *Janzik*, 2000 WL 1745203 at *2.

While federal courts undoubtedly have jurisdiction under the Convention and ICARA to act where children have been wrongfully removed from their country of habitual residence, that jurisdiction does not extend to access issues and alleged breaches of access rights. These issues are best left to the state courts that traditionally deal with this special area of the law. *See Fernandez*, 121 F.Supp.2d at 1126 (citing *Bromley* 30 F.Supp.2d at 862).

This Court must dismiss this Petition for lack of jurisdiction. It would appear, however, that the instant disagreement is so close to full resolution that it could be speedily settled by payment of the relatively small passport fee by either party desirous of securing the child's passage. Time is of the essence. Passport approval takes time and the planned departure approaches. Although absent jurisdiction, the Court's admonition being purely dicta, the Court urges the parties to settle the immediate problem before seeking relief in the appropriate forum, which will delay, and perhaps prevent, the son's visit with his mother.

For lack of subject matter jurisdiction, this action is **DISMISSED** without prejudice so the parties may proceed in an appropriate state court. The case is **ORDERED STRICKEN** from the Court's docket. The Clerk is directed to send a copy of this Memorandum Opinion and Order to counsel of record and publish on the Court's website at http://www.wvsd.uscourts.gov.