PUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

SARAH CLAUDIA ARAGON CANTOR,
　　　　　*Petitioner-Appellant,*

v.

ANDREW COHEN,
　　　　　*Respondent-Appellee.*

No. 05-1609

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Alexander Williams, Jr., District Judge.
(CA-04-3428-AW)

Argued: September 20, 2005

Decided: March 21, 2006

Before WIDENER and TRAXLER, Circuit Judges, and
R. Bryan HARWELL, United States District Judge for the
District of South Carolina, sitting by designation.

---

Affirmed by published opinion. Judge Harwell wrote the majority opinion, in which Judge Widener joined. Judge Traxler wrote a dissenting opinion.

---

## COUNSEL

**ARGUED:** Stephen John Cullen, MILES & STOCKBRIDGE, P.C., Towson, Maryland, for Appellant. Patricia Emily Apy, PARAS, APY & REISS, Red Bank, New Jersey, for Appellee. **ON BRIEF:** Darragh L. Inman, MILES & STOCKBRIDGE, P.C., Baltimore, Maryland, for Appellant.

**OPINION**

HARWELL, District Judge:

This appeal presents the question of whether the International Child Abduction Remedies Act ("ICARA"), 42 U.S.C. §§ 11601-11610, confers jurisdiction upon federal courts to hear access claims.[1] Petitioner-Appellant, Sarah Claudia Aragon Cantor, appeals the district court's order of April 18, 2005, dismissing her access claims. On May 23, 2005, the district court granted Ms. Cantor's motion for final judgment pursuant to Fed.R.Civ.P. 54(b) on the access claims and for clarification of ruling on the alternative access claim for one of her children referred to herein as A.C. Specifically, when dismissing the access claims, the district court held that it did not have jurisdiction to hear access claims under ICARA. For the following reasons, we affirm the decision of the district court.

I.

Ms. Cantor and Mr. Cohen married in April 1990. At the time of the marriage, Ms. Cantor and Mr. Cohen resided in Israel. During the marriage the couple had four children, R.C., A.C. (the girls), I.C., and Y.C. (the boys), the latter three of whom are the subject of this appeal.[2] On July 16, 1998, the couple divorced in an Israeli Rabbinical Court and a divorce decree was issued. The divorce decree provided that Mr. Cohen would receive custody of A.C. and I.C., the two oldest children, and Ms. Cantor would retain custody of Y.C. and R.C., the two younger children. The divorce decree also granted visitation rights to Ms. Cantor.

Subsequent to the divorce decree, Ms. Cantor and Mr. Cohen discussed the possibility of the girls being placed with their mother and the boys with their father. Pursuant to this discussion, on September 7, 1998, Ms. Cantor relinquished custody of Y.C. to Mr. Cohen and

---

[1]Under ICARA, the term "rights of access" means visitation rights. 42 U.S.C. § 11602(7).

[2]A review of the background information in this matter reveals no less than three orders issued by the Israeli Rabbinical Court which involve the children.

took custody of A.C. In June 1999, Ms. Cantor filed suit in the Israeli Rabbinical Court, seeking changes to the first divorce decree. In July 1999, Mr. Cohen was ordained as a Rabbi and joined the United States Air Force Chaplaincy. Mr. Cohen was scheduled to attend training school in the United States. On January 2, 2000, a second divorce decree was issued by the Rabbinical Court. The second divorce decree formalized the living situation of the children that Ms. Cantor and Mr. Cohen had earlier agreed upon by granting Ms. Cantor custody of the girls, A.C. and R.C., and granting Mr. Cohen custody of the boys, I.C. and Y.C. The decree provided that Ms. Cantor would have temporary custody of the two boys while Mr. Cohen attended training school (from approximately January 2000 until September 2000).

On July 9, 2002, a third divorce decree was issued by the Rabbinical Court. The third divorce decree provided that Ms. Cantor would retain custody over the two girls, and that Mr. Cohen would retain custody over the two boys. The third divorce decree also provided that the two boys and A.C. would live with Mr. Cohen in Germany, where he was stationed with the United States Air Force at the time. The third divorce decree refers to A.C.'s stay in Germany as an "extended visit." The third divorce decree also obligates Mr. Cohen to finance half of the cost of Ms. Cantor's visits to Y.C., I.C., and A.C. in Germany, which were to occur every two months. It also instructed Mr. Cohen to enable the children to call Ms. Cantor three times a week, and to bring the children to Israel to visit Ms. Cantor at least twice a year. This divorce decree attributes the changed custody situation to the security issues in Israel, the educational needs of A.C., and the neurological and the psychological needs of Y.C. However, the decree does not surrender custody of A.C. to Mr. Cohen, nor does it provide a date for A.C.'s permanent return to Israel.

In December 2002, Ms. Cantor and Mr. Cohen had discussions about R.C.'s situation in Israel. Specifically, Ms. Cantor told Mr. Cohen that R.C. missed her siblings and that neither R.C. nor Ms. Cantor liked the school R.C. was attending. As a result, Ms. Cantor and Mr. Cohen agreed that R.C. would move to Germany to live with Mr. Cohen. There is a disagreement among the parties as to when R.C. was to return to Israel.

On March 2, 2004, Mr. Cohen was assigned a brief duty in Qatar and was told to report to the United States upon completion of this duty. On April 17, 2004, Mr. Cohen completed his duty and reported to the United States. Mr. Cohen initially resided with his four children in Pittsburgh, Pennsylvania. On July 11, 2004, all four children moved with Mr. Cohen to Silver Spring, Maryland. Ms. Cantor continues to live in Israel.

On October 22, 2004, Ms. Cantor filed a verified petition in the United States District Court for the District of Maryland for return of the children and access to the children. On November 12, 2004, Mr. Cohen filed a motion to dismiss. On April 18, 2005, the district court found that it lacked jurisdiction to hear Ms. Cantor's access claims and dismissed the complaint insofar as it requests access to I.C. and Y.C. On April 26, 2005, Ms. Cantor filed a motion for final judgment pursuant to Fed.R.Civ.P. 54(b) on the access claims and for clarification of the district court's ruling on the access claim for A.C. On May 18, 2005, Ms. Cantor timely appealed the district court's decision dismissing the access claims. On May 23, 2005, the district court granted Ms. Cantor's motion and certified that its decision dismissing all of the access claims, including the access claim as to A.C., was a final judgment.

## II.

The district court found as a matter of law that it lacked jurisdiction to hear the access claims and dismissed those claims. Regardless of whether the dismissal is considered to have been entered under Fed.R.Civ.P. 12(b)(6) or Fed.R.Civ.P. 12(b)(1), we review the decision de novo. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

The district court's Fed.R.Civ.P. 54(b) certification is subject to an abuse of discretion standard. *See Curtis-Wright Corp. v. General Elec. Co.*, 446 U.S. 1, 10 (1980); *see also Braswell Shipyards, Inc. v. Beazer East, Inc.*, 2 F.3d 1331, 1339 (4th Cir. 1993) (Luttig, J. dissenting) ("[w]e may disturb a trial court's decision to enter judgment under Federal Rule of Civil Procedure 54(b) 'only if [we] can say that its conclusion was clearly unreasonable.'") (quoting *Curtis-Wright*, 446 U.S. at 10). We find the district court's decision to enter judg-

ment under Fed.R.Civ.P. 54(b) in this case was reasonable and not an abuse of discretion. Accordingly, we possess jurisdiction and will review the Appellant's claims on the merits.

As stated above, this appeal presents the question of whether federal courts are authorized to hear access claims under ICARA. ICARA is the federal legislation which implemented the Hague Convention on the Civil Aspects of International Child Abduction, October 25, 1980, 19 I.L.M. 1501 (1980) (the "Hague Convention" or "Convention") in the United States.

The Appellant argues the plain language of § 11603(b) of ICARA confers jurisdiction to federal courts to hear access claims. Specifically, § 11603(b) states:

> [a]ny person seeking to initiate judicial proceedings under the Convention for the return of a child or for arrangements for organizing or securing the effective exercise of rights of access to a child may do so by commencing a civil action by filing a petition for relief sought in any court which has jurisdiction of such action and which is authorized to exercise its jurisdiction in the place where the child is located at the time the petition is filed.

42 U.S.C. § 11603(b).

The Appellant argues this section of the statute unambiguously allows "judicial proceedings" to secure the "effective exercise of rights of access to a child" through "a civil action." *Id.* In support of this argument, the Appellant points out that 42 U.S.C. § 11603(e) establishes a burden of proof with regard to rights of access. The Appellant also notes that 42 U.S.C. § 11603(a) states that the "courts of the States and United States district courts shall have concurrent original jurisdiction of actions arising under the Convention."

To resolve the issue presented in this appeal we find that we must begin by looking at the implementing language in ICARA, 42 U.S.C. § 11601, *et seq.* We believe the analysis does not begin at 42 U.S.C. § 11603, as suggested by the Appellant, but instead at 42 U.S.C.

§ 11601. In the initial findings under § 11601(a) particular emphasis is drawn to Congressional concern regarding international abduction or wrongful retention of children. Notably, this section does not mention visitation rights or access rights until the last subsection, subsection 4, and then only mentions these rights in the context of the Convention. Specifically, the subsection describes that "**[t]he Convention** . . . establishes legal rights and procedures for the prompt return of the children who have been wrongfully removed or retained, as well as for securing the exercise of visitation rights." 42 U.S.C. § 11601(a)(4) (emphasis added).

Furthermore, subsection (b)(1) of § 11601, which is part of Congress' declarations, states that "[i]t is the **purpose** of this chapter to establish procedures for the **implementation of the Convention** in the United States." 42 U.S.C. § 11601(b)(1) (emphasis added). More importantly, subsection (b)(4) of § 11601, which is also part of Congress' declarations, states that:

> *[t]he Convention and this chapter **empower courts in the United States to determine only rights under the Convention** and not the merits of any underlying child custody claims.*

42 U.S.C. § 11601(b)(4) (emphasis added).

Turning to the language of the Hague Convention itself, the legal rights and procedures contained therein addressing applications for the organization or establishment of rights of visitation are found at Chapter IV entitled "Rights of Access." The Convention sets forth in Article 21:

> An application to make arrangements for organizing or *securing the effective exercise of rights of access may be presented to the **Central Authorities** of the Contracting* States in the same way as an application for the return of a child.

> The **Central Authorities** are bound by the obligations of co-operation which are set forth in Article 7 to promote the

peaceful enjoyment of access rights and the fulfillment of conditions to which the exercise of those rights may be subject. The Central Authorities shall take steps to remove, as far as possible, all obstacles to exercise of such rights.

The **Central Authorities,** *either directly or through intermediaries, may initiate or assist in the institution of proceedings* with a view to organizing or protecting these rights and securing respect for the conditions to which the exercise of those rights may be subject.

Hague Convention, art. 21, 19 I.L.M. at 1503 (emphasis added).

Article 21 states that an application may be presented to the Central Authorities for securing the effective exercise of access rights. The Central Authority in the United States is the Department of State.[3] Notably, Article 21 of the Convention does not provide for presentation to a judicial authority.[4] This is in sharp contrast to Article 12 of the Convention, which addresses wrongful removal or return claims, and specifically refers to the initiation of judicial proceedings and grants judicial authority to provide expedited relief in the case of the wrongful removal or retention of children.[5]

It is in that context that we find that 42 U.S.C. § 11603 must be read, which provides in subsection (b) that:

---

[3]42 U.S.C. § 11606(a) states that "[t]he President shall designate a Federal agency to serve as the Central Authority for the United States under the Convention." President Reagan, by Executive Order No. 12648, 53 Fed.Reg. 30637, designated the Department of State as the Central Authority. The Department of State then promulgated regulations designating the National Center for Missing and Exploited Children as the organization to perform the operational functions with respect to applications under the Convention. *See* 22 C.F.R. § 94.6.

[4]Article 21 does leave open the possibility that Central Authorities "may initiate or assist in the institution of proceedings."

[5]Article 12 provides that removal claims can also be presented to the administrative (Central) authorities.

*[a]ny person seeking to initiate judicial proceedings **under the Convention** for the return of a child *or for arrangements for organizing or securing the effective exercise of rights of access* to a child may do so by commencing a civil action by filing a petition for relief sought in any court *which has jurisdiction of such action* and which is *authorized to exercise its jurisdiction* in the place where the child is located at the time the petition is filed.

42 U.S.C. § 11603(b) (emphasis added).

As noted above, under the Convention, the Appellant has no right to initiate judicial proceedings for access claims and the federal courts are not authorized to exercise jurisdiction over the access claims brought by the Appellant. It is on this premise that we find, and the district court found, that the courts of the United States lack a substantive basis for the resolution of the access claims asserted by the Appellant.

As additional support of her argument that 42 U.S.C. § 11603(b) confers federal courts jurisdiction to hear access claims, the Appellant cites to 42 U.S.C. § 11601(b)(2) which states that "[t]he provisions of this chapter are in addition to and not in lieu of the provisions of the Convention." However, as discussed above, our interpretation of section 11603(b) of ICARA is consistent with the provisions of the Convention.[6] We also refer once more to 42 U.S.C. § 11601(b)(4) which states that "[t]he Convention and this chapter empower courts in the United States to determine only rights under the Convention . . . ."

Few federal courts have had the occasion to examine the question presented in this case. Indeed, the district court's decision in this case is consistent with the reported decisions of five district courts that have so interpreted the federal courts lacking jurisdiction to resolve access claims. *See In re Application of Adams ex. rel. Naik v. Naik*, 363 F. Supp. 2d 1025, 1030 (N.D. Ill. 2005); *Wiggill v. Janicki*, 262

---

[6]Again, the subsection of ICARA upon which the Appellant argues confers jurisdiction to federal courts to hear access claims begins with the language that "[a]ny person seeking to initiate judicial proceedings **under the Convention** . . . ." 42 U.S.C. § 11603(b) (emphasis added).

F. Supp. 2d 687, 689 (S.D. W. Va. 2003); *Yi Ly v. Heu*, 296 F. Supp. 2d 1009, 1011 (D. Minn. 2003); *Teijeiro Fernandez v. Yeager*, 121 F. Supp. 2d 1118, 1125 (W.D. Mich. 2000); *Bromley v. Bromley*, 30 F. Supp. 2d 857, 860-61 (E.D. Pa. 1998).

The Appellant acknowledges the decision of these courts, however, she attempts to distinguish this case by arguing that in all of the above cases the petitions for access were only brought and considered under the Convention, and not under ICARA. Yet, this argument is flawed because in all but one of the above cases, the petitions were brought under both. *See Naik*, 363 F. Supp. 2d at 1027 ("Petitioner also claims rights under provisions of the International Child Abduction Remedies Act . . . ."); *Wiggill*, 262 F. Supp. 2d at 688 ("The Wiggell Petition is brought under the Hague Convention and requests rights of access pursuant to Article 21 of the Convention on the Civil Aspects of International Child Abduction . . . as adopted by the International Child Abduction Remedies Act . . . ."); *Id.* at 690 ("While federal courts undoubtedly have jurisdiction under the Convention and ICARA to act where children have been wrongfully removed from their country of habitual residence, that jurisdiction does not extend to access issues and alleged breaches of access rights."); *Teijeiro Fernandez*, 121 F. Supp. 2d at 1119 ("Petitioner . . . filed a verified Petition for Access to Minor Children under the Hague Convention on the Civil Aspects of International Child Abduction . . . and the International Child Abduction Remedies Act . . . ."); *Bromley*, 30 F. Supp. 2d at 858 ("Petitioner . . . brought this action pursuant to Hague Convention on the Civil Aspects of International Child Abduction of October 25, 1980, and the United States Congress in the International Child Abduction Remedies Act, 42 U.S.C. §§ 11601-11610.").

We also note that in *Bromley*, the Court found additional support of its holding that it did not have jurisdiction over access claims in the State Department's own legal analysis of the Convention and the remedies provided therein for breach of access rights. The State Department found that:

> [u]p to this point this analysis has focussed [sic] on judicial and administrative remedies for removal or retention of children in breach of custody rights. "Access rights," which are synonymous with "visitation rights," are also protected by

the Convention, but to a lesser extent than custody rights. While the Convention preamble and Article 1(b) articulate the Convention objective of ensuring that rights of access under the law of one state are respected in other Contracting States, the remedies for breach of access rights are those enumerated in Article 21 . . . .

State Department, 51 Fed.Reg. 10,494, 10,513.

### III.

We find additional support for our decision in this case in the long established precedent that federal courts are courts of limited jurisdiction and generally abstain from hearing child custody matters. *See Cole v. Cole*, 633 F.2d 1083, 1087 (4th Cir. 1980). With the exception of the limited matters of international child abduction or wrongful removal claims, which is expressly addressed by the Convention and ICARA, other child custody matters, including access claims, would be better handled by the state courts which have the experience to deal with this specific area of the law. This also appears to be the consensus among several of the reported decisions of district courts referenced above. *See Wiggill*, 262 F. Supp. 2d at 690; *Teijeiro Fernandez*, 121 F. Supp. 2d at 1126; *Bromley*, 30 F. Supp. 2d at 862.

With that in mind, we also find it helpful to briefly examine some of ICARA's legislative history. The portion of the legislative materials we cite references procedures to implement the Hague Convention:

Mr. DIXON. The language of the House version of the bill grants original jurisdiction to the courts of the States. At the same time, it states that Federal courts shall "have jurisdiction to the extent authorized by chapter 85 of title 28, United States Code."

In practice, all actions **arising under the convention** involve interpretation of the Hague Convention Treaty and therefore could be removed to the Federal courts. Therefore, petitions for return under the convention could be heard in either State or Federal courts.

My amendment has the same result by simply granting concurrent original jurisdiction.

The reason that the House constructed this approach was out of concern that these cases would embroil the Federal courts in deciding child custody matters. I must say that I understand this concern, and that **none of the proponents of this bill, or my amendment, want to see the Federal courts to be involved in deciding the underlying custody disputes**. This bill has been carefully drafted to avoid this possibility. Section 2(b)(4) provides that **"the convention and *this act empower courts in the United States to determine only rights under the convention* and not the merits of any underlying child custody claims." This language limits consideration to only those issues specifically contained in the Hague Convention, and not to child custody in general**.

The reason I believe it is important to amend the House language regarding jurisdiction is that the complexity of the House language could very likely result in an endless series of litigation regarding whether the Federal court can hear each specific case. One of the primary purposes of this implementing legislation is to define a clear and consistent set of procedures **for upholding our obligations under the Hague Convention**. I believe that the goal would be better served through clear language on this sensitive matter of jurisdiction. This point was most recently clarified in the Supreme Court's decision of Thompson versus Thompson issued January 12, 1988. That case underscores the value of expressly providing the intent of Congress. My amendment would have the same practical effect as the house language, however, it is clearer and would avoid needless litigation which could delay the rightful return of a child to its custodial parent.

Procedures to Implement the Convention on the Civil Aspects of International Child Abduction, 134 Cong. Rec. S3839, 3839-40 (daily ed. April 12, 1988) (statement of Sen. Dixon) (emphasis added).

Sen. Hatch from Utah spoke in response to the offer of the amendment to express concerns with respect to the language:

>    Mr. Hatch. This is a measure that has previously passed the Senate and in this Congress there is a companion bill currently before the Subcommittee on Courts and Administrative Practice of the Senate Judiciary Committee. In relation to the committee's consideration of this issue, I recently received communications from Conference of Chief Justices and the Department of Justice that they, along with the Judicial Conference of the United States, believe that "State courts should have exclusive jurisdiction in all legal actions under the convention."

>    The concern raised by these organizations is based on the fact that child custody matters have traditionally been issues handled exclusively by State courts and not within the expertise of the Federal courts. Given their concerns, I decided to closely examine the issue. Quite frankly, it is a close call. While child custody has traditionally been a State court matter, **the interpretation of treaties** with foreign countries is a responsibility of the Federal courts under section 2 of article III of the Constitution. In the case at hand, we have a treaty with an underlying concern of child custody. Thus, the issues of treaty interpretation and child custody are inseparable [sic] combined.

>    Mr. President, it is my understanding that the sponsors of this bill are aware of these concerns, and that they have attempted to address them in a responsible manner in the language of the bill. At this time I would like to pose a few questions to my distinguished colleague from Illinois in order to help clarify the matter.

>    **Am I correct in my understanding that the bill has been drafted so as to limit consideration by the courts to only those issues specifically contained in the Hague Convention on the Civil Aspects of International Child Abduction**, and not to child custody in general?

Mr. DIXON. **Yes. Section 2(b)(4) of H.R. 3971 provides that "the Convention and this Act empower courts in the United States to determine only rights under the Convention and not the merits of any underlying child custody claims**."

*Id.* at 3841 (statements of Sen. Hatch and Sen. Dixon) (emphasis added).

Finally, written comments submitted by Sen. Simon, provide in pertinent part:

Mr. Simon. This is the third time the Senate has taken up the matter of the Hague Convention and has addressed the problem of the abduction, or wrongful retention, of children overseas in custody related disputes. On October 9, 1986, the Senate voted unanimously to give its advice and consent to ratification of the Convention. In June 1987, I introduced S. 1347, a bill drafted by the Administration to implement the Convention. The enactment of this legislation is the last remaining barrier to ratification by the United States. **It will insure that the provisions of the Convention are carried out in a manner that is consistent with the intent of the Convention's negotiators in the context of our legal system**. On October 8, 1987, the Senate adopted the text of S. 1347 as an amendment to the State Department authorization bill, H.R. 1777. The Amendment was deleted in conference at the request of the Chairman of the House Judiciary Committee that they be given an opportunity to consider the legislation in hearings before that Committee.

Both the House and the Senate have now held hearings on this measure, and technical clarifications have been made to the language of S. 1347 through H.R. 3971. In only one area — that of original court jurisdiction — is there a substantial need to clarify the language of H.R. 3971 to conform to the intent of the sponsors of the Senate bill, and my colleague from Illinois is offering that needed amendment. The Amendment will restore the language of S. 1347 calling for concurrent jurisdiction in State and Federal Courts to hear

proceedings arising under the Convention and this legislation.

**The language of this amendment should not raise a concern to Federal Judges that they will be moving into child custody matters traditionally in the jurisdiction of State Courts**.

*Id.* at 3841-42 (statement of Sen. Simon) (emphasis added).

We note that in this legislative history there is no mention of any separate rights apart from those set forth in the Hague Convention.

This court also finds that a common sense approach to the issue at hand provides us guidance. We point out that § 11603(e)(2) of ICARA and Articles 12, 13, and 20 of the Convention provide for several affirmative defenses a court can consider when dealing with wrongful removal claims.[7] However, there are no provisions in either ICARA or the Convention which provide defenses to access claims.

---

[7]If a Respondent can prove any of the following affirmative defenses a court can refuse to order the return of a child:

> that there is a grave risk that returning the child to the petitioner would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation;

> that returning the child to the petitioner would not be permitted by the fundamental principals of the United States relating to the protection of human rights and fundamental freedom;

> that the petitioner's action for return was not commenced within one year of the wrongful retention and that the child is well-settled in the United States;

> that the petitioner was not actually exercising the custody rights at the time of retention or had consented to or subsequently acquiesced in the retention; or

> that the child objects to being returned and has attained an age and degree of maturity at which it is appropriate to take account of his or her views.

*See* 42 U.S.C. § 11603(e)(2); Hague Convention, arts. 12, 13, and 20, 19 I.L.M. at 1502-03.

It is difficult to believe that federal courts could entertain access claims, yet would be left powerless to consider any defenses which concern the safety or the best interests of a child. For example, how would a federal court deal with a situation where it exercised jurisdiction over an access claim, yet the court could not consider the fact that a child's life may be in danger by the enforcement of an access right?[8] For this reason as well, we find federal courts lack jurisdiction to hear access claims. By contrast, a state court would have the ability to weigh the children's interests, the parent's interests, and other familial considerations. Therefore, we find it best not to move domestic relations litigation to federal courts.

## IV.

The Appellant also cites this court's decision in *Katona v. Kovacs*, No. 04-2040 (4th Cir. Aug. 31, 2005), in support of her argument that federal courts have jurisdiction to hear access claims. We initially note that *Katona* is an unpublished case and pursuant to Local Rule 36(c) unpublished opinions are not binding precedent in this circuit. However, the issue presented in this case is not the same as the one presented to the court in *Katona*. In *Katona*, the question presented was whether the district court erred in denying a petition for the **return** of children pursuant to the Hague Convention and its implementing legislation, the International Child Abduction Remedies Act. The court held in *Katona* that "[b]ecause the record before this court fails to demonstrate whether Katona established a wrongful removal or whether his former wife, Magdonla Kovacs, has an adequate defense to the petition, we vacate the judgment and remand for further proceedings." *Id.* at 2.

The court went on to make a distinction between the remedies available when considering rights of custody from the remedies available in cases concerning rights of access or visitation. The court explained that:

---

[8]We note that access rights, "include the right to take a child for a limited period of time to a place other than the child's habitual residence." Hague Convention, art. 5, 19 I.L.M. at 1501.

> [w]hile the remedy for violating rights of custody requires
> the child's return to the country of habitual residence, the
> remedies for violating rights of access are less drastic, such
> as "ordering that the custodial parent who removed the child
> from the child's habitual residence reimburse the other par-
> ent for expenses incurred in exercising his or her rights of
> access."

*Id.* at 4 (quoting *Whallon v. Lynn*, 230 F.3d 450, 455 n. 3 (1st Cir. 2000)). The court held that should the district court determine on remand "from the evidence that Katona has only a right of access, it should craft a remedy **within the context of the Convention** to ensure Katona can exercise that right." *Id.* at 5 (emphasis added).[9]

We note that the *Whallon* case cited by the court in *Katona*, is a case which only addressed a wrongful removal claim. The court in *Whallon* stated the following in a footnote:

> [w]hile the Hague Convention provides remedies for a vio-
> lation of access rights, *see id.*, art. 21, 19 I.L.M. at 1503,
> such remedies do not include an order of return to the place
> of habitual residence. Rather such remedies include, inter
> alia, ordering that the custodial parent who removed the
> child from the child's habitual residence reimburse the other
> parent for expenses incurred in exercising his or her rights
> of access. *Id.* art. 26, 19 I.L.M. at 1503-04.

*Whallon*, 230 F.3d at 455 n. 3. Notably, the court in *Whallon* first cites to Article 21 of the Convention when referring to remedies for a violation of access rights. As discussed above, Article 21 provides that an application to make arrangements for organizing or securing the effective exercise of rights of access may be presented to the Central Authorities. Article 21 does not provide for a judicial remedy.

The court in *Whallon* next cites to Article 26 of the Convention when referring to a remedy of requiring reimbursement of expenses.

---

[9]As previously noted, the Convention only provides jurisdiction to "the Central Authorities" to remedy situations involving rights of access.

Article 26 of the Convention is found at Chapter V entitled "General Provisions." Article 26 sets forth:

Each Central Authority shall bear its own costs in applying this Convention.

Central Authorities and other public services of Contracting States shall not impose any charges in relation to applications submitted under this Convention. In particular, they may not require any payment from the applicant towards the costs and expenses of the proceedings or, where applicable, those arising from the participation of legal counsel or advisers. However, they may require the payment of expenses incurred or to be incurred in implementing the return of a child.

However, a Contracting state may, by making a reservation in accordance with Article 42, declare that it shall not be bound to assume any costs referred to in the preceding paragraph resulting from the participation of legal counsel or advisers or from court proceedings, except insofar as those costs may be covered by its system of legal aid and advise.

Upon ordering the return of a child or issuing an order concerning rights of access *under this Convention, the **judicial or administrative authorities** may**, where appropriate**, direct the person who removed or retained the child, or who prevented the exercise of rights of access, to pay necessary expenses* incurred by or on behalf of the applicant, including travel expenses, any costs incurred or payments made for locating the child, the costs of legal representation of the applicant, and those of returning the child.

Hague Convention, art. 26, 19 I.L.M at 1503-04 (emphasis added).

In order to find consistency with Article 21, we interpret this section of the Convention to permit administrative authorities [the Central Authorities] to direct the person who prevented the exercise of

"rights of access" to pay necessary expenses. Also, consistent with Article 12, judicial **or** administrative authorities are permitted under this section to direct the person who "removed or retained" a child to pay necessary expenses.

## V.

We note that our decision does not leave the Appellant without a remedy for the exercise of her access rights. The Convention does not prevent the Appellant from filing a claim for visitation in state court under the state's visitation law. *See* Hague Convention, arts. 29 & 34, 19 I.L.M. at 1504; *see also Wiggill*, 262 F. Supp. 2d at 690; *Teijeiro Fernandez*, 121 F. Supp. 2d at 1126; *Bromley*, 30 F. Supp. 2d at 862. Additionally, as discussed above, the Appellant may file a petition with the Central Authorities pursuant to the Convention in order to address her access claims.

For the reasons stated herein, the district court is affirmed. To hold otherwise would be contrary to Congress' declaration that ICARA is intended to "empower courts in the United States to determine only rights under the Convention . . . ." 42 U.S.C. § 11601(b)(4).

*AFFIRMED*

TRAXLER, Circuit Judge, dissenting:

For the reasons set forth below, I would hold that the district court has jurisdiction and I would remand this case for further proceedings.

## I.

Cantor brought this action under the International Child Abduction Remedies Act ("ICARA"), 42 U.S.C.A. §§ 11601-11611 (West 2005), which is the implementing legislation for the Hague Convention on the Civil Aspects of International Child Abduction ("Hague Convention" or "Convention"), Oct. 25, 1980, T.I.A.S. No. 11,670, 19 I.L.M. 1501. Article 1 of the Hague Convention posits two fundamental objectives: (1) "to secure the prompt return of children wrongfully removed to or retained in any Contracting State"; and (2) "to ensure

that rights of custody and of access under the law of one Contracting State are effectively respected in other Contracting States." As we explained in *Miller v. Miller*, 240 F.3d 392 (4th Cir. 2001):

> In adopting the Hague Convention, the signatory nations sought to protect children internationally from the harmful effects of their wrongful removal or retention and to establish procedures to ensure their prompt return to the State of their habitual residence, as well as to secure protection for rights of access. That is, the primary purpose of the Hague Convention is to preserve the status quo and to deter parents from crossing international boundaries in search of a more sympathetic court.

*Id.* at 398 (internal citations and quotation marks omitted). The Hague Convention aims to have judicial authorities decide whether a child has been wrongfully removed or retained in violation of existing custody rights, or whether existing access rights are being violated, not whether the petitioning parent is better suited to serve as custodian. *See, e.g.*, *Yang v. Tsui*, 416 F.3d 199, 203 (3d Cir. 2005) (explaining the "adjudication of a Hague Convention Petition" is distinct from "[c]ustody litigation in state court [that] revolves around findings regarding the best interest of the child"), *petition for cert. filed*, 74 U.S.L.W. 3337 (U.S. Nov. 29, 2005) (No. 05-697). The Hague Convention limits judicial authorities to considering claims for return of a child or to secure the exercise of access rights and forbids courts to revisit the merits of the underlying custody decision. *See* Hague Convention, art. 16, 19 I.L.M. at 1503; *cf. Miller*, 240 F.3d at 398 (explaining that "[t]he merits of any underlying custody case are not at issue" in an action brought under the Hague Convention) (internal quotation marks omitted).

For purposes of this case, the significance of the Hague Convention's purpose, as reflected in the Preamble and Article 1, is that the Contracting States sought to protect and foster respect for *two categories* of legal rights — rights of custody and rights of access. The Convention defines "rights of custody" as "rights relating to the care of the person of the child and, in particular, the right to determine the child's place of residence." Hague Convention, art. 5(a), I.L.M. at 1501. "Rights of access" are essentially visitation rights enjoyed by

the non-custodial parent, specifically including "the right to take a child for a limited period of time to a place other than the child's habitual residence." Hague Convention, art. 5(b), 19 I.L.M. at 1501.

By enacting ICARA, Congress implemented the Hague Convention, giving it the force of law in the United States.[1] Congress incorporated into ICARA the primary objectives of the Hague Convention with respect to both classes of rights, finding that the Convention "establishes legal rights and procedures for the prompt return of children who have been wrongfully removed or retained, as well as for securing the exercise of visitation rights." 42 U.S.C.A. § 11601(a)(4). The express purpose of ICARA is "to establish procedures for the implementation of the Convention in the United States." 42 U.S.C.A. § 11601(b)(4). ICARA "empower[s] courts in the United States to determine only rights under the Convention and not the merits of any underlying child custody claims." 42 U.S.C.A. § 11601(b)(4). On its face, the unqualified phrase "rights under the Convention" encompasses "rights of access" as well as "rights of custody."

Under ICARA's "Judicial remedies" provision, federal courts enjoy concurrent original jurisdiction with the state courts over "actions arising under the Convention." 42 U.S.C.A. § 11603(a). Section 11603 expressly contemplates that such actions may include not only claims for the return of a child being held in violation of custody rights, but also claims "for organizing or securing the effective exercise of rights of access." 42 U.S.C.A. § 11603(b). A straightforward

---

[1]"International treaties are not presumed to create rights that are privately enforceable" without enabling legislation from Congress. *Goldstar (Panama) S.A. v. United States*, 967 F.2d 965, 968 (4th Cir. 1992); *see Trans World Airlines, Inc. v. Franklin Mint Corp.*, 466 U.S. 243, 252 (1984). "An international agreement of the United States is 'non-self-executing' . . . if the agreement manifests an intention that it shall not become effective as domestic law without the enactment of implementing legislation." *Restatement (Third) of Foreign Relations Law* § 111(4)(a). Article 2 of the Hague Convention directs "Contracting States [to] take all appropriate measures to secure within their territories the implementation of the objects of the Convention." Such language does not evidence an intent that the agreement be self-executing; congressional action was thus necessary. *See Auguste v. Ridge*, 395 F.3d 123, 132 n.7 (3d Cir. 2005).

reading of this provision suggests that ICARA affords aggrieved parents a judicial forum for resolving claims that involve either custody rights or access rights:

> Any person seeking to initiate judicial proceedings under the Convention for the return of a child or for arrangements for organizing or securing the effective exercise of rights of access to a child may do so by commencing a civil action by filing a petition for the relief sought in any court which has jurisdiction of such action and which is authorized to exercise its jurisdiction in the place where the child is located at the time the petition is filed.

42 U.S.C.A. § 11603(b). ICARA establishes a preponderance of the evidence standard of proof for petitions filed under section 11603(b), regardless of whether the petition is for the return of a child or for securing the exercise of access rights. *See* 42 U.S.C.A. § 11603(e)(1). The statute, however, makes a distinction between these two types of claims with respect to petitioner's prima facie case. When the petition seeks the return of a child, the petitioner must prove by a preponderance of evidence that "the child has been wrongfully removed or retained within the meaning of the Convention." 42 U.S.C.A. § 11603(e)(1)(A).[2] When the petition seeks to secure "the effective exercise of rights of access," the petitioner must prove by a preponderance of evidence simply that he "has such rights." 42 U.S.C.A. § 11603(e)(1)(B).

Cantor commenced this action under ICARA asserting both types of claims. She alleged her daughters were removed or retained in contravention of her custody rights and sought the return of the girls to Israel. She did not assert custody rights as to her two sons, but she alleged that she was being denied the effective exercise of her rights

---

[2] In order to demonstrate wrongful removal or retention within the meaning of Article 3 of the Hague Convention, the petitioner must prove that the children were "'habitually resident'" in the country from which they were removed, that "the removal was in breach of [the petitioner's] custody rights," and that the petitioner "had been exercising those rights at the time of removal." *Miller*, 240 F.3d at 398; *see* Hague Convention, art. 3, 19 I.L.M. at 1501 (defining "wrongful" removal).

of access to the boys. For purposes of this appeal, however, we are concerned only with the petition as it relates to Cantor's access rights. The district court dismissed Cantor's petition to the extent that it sought enforcement of her alleged access rights, concluding that federal courts do not have jurisdiction to adjudicate such a claim because the Hague Convention "provides for no . . . recourse to judicial authority" for claims involving access rights. J.A. 28. The district court concluded that, under Article 21 of the Hague Convention, the non-custodial parent's only recourse for an alleged breach of access rights is to file an application with the Central Authority of the country in which the child is located. By contrast, the district court noted, the Hague Convention establishes "action by the 'judicial or administrative authority'" as the standard "remedy" for a claim of wrongful removal in breach of custody rights. J.A. 28. The district court limited its analysis to the language of the Hague Convention and did not address the effect, if any, of ICARA. Having concluded that there is no judicial forum in which Cantor can raise her denial of access rights claim, the district court dismissed for lack of jurisdiction.

The result reached by the district court is consistent with a substantial line of district court decisions holding that federal courts have no jurisdiction to adjudicate claims involving access rights. *See, e.g.*, *Ly v. Heu*, 296 F. Supp. 2d 1009, 1010-11 (D. Minn. 2003); *Wiggill v. Janicki*, 262 F. Supp. 2d 687, 689 (S.D.W. Va. 2003); *Fernandez v. Yeager*, 121 F. Supp. 2d 1118, 1125-26 (W.D. Mich. 2000); *Bromley v. Bromley*, 30 F. Supp. 2d 857, 860 (E.D. Pa. 1998). These decisions answer the jurisdictional question solely by reference to the text of the Hague Convention rather than the implementing statute, often relying upon ICARA's language that federal courts have "jurisdiction of actions *arising under the Convention*," 42 U.S.C.A. § 11603(a) (emphasis added), and that ICARA's provisions "are in addition to and not in lieu of the provisions of the Convention." 42 U.S.C.A. § 11601(b)(2). In turn, the lower courts uniformly have concluded, based on a comparison of Article 12 (addressing the return of a wrongfully removed child) and Article 21 (addressing rights of access), that the Hague Convention does not provide either (1) a judicial forum to resolve disputes regarding access rights or (2) a substantive remedy for the denial of access rights. *See, e.g.*, *Ly*, 296 F. Supp. 2d at 1011 (noting "[t]he lack of parallelism between Article 12 and Article 21 has led the district courts that have considered the issue to

conclude that the Convention creates no judicial power to enforce rights of access"). As stated in *Ly*, which is fairly representative of this line of decisions,

> [t]here is . . . reason to doubt that the Convention provides a judicial remedy for violations of a parent's visitation rights. Article 12 of the Convention, which addresses procedures to effectuate the return of a wrongfully removed child, specifically refers to action by the "judicial or administrative authority" of a member nation. *See* Hague Convention, art. 12. In contrast, Article 21 of the Convention, which deals with "organizing or securing the effective exercise of rights of access" to a child, makes no mention of recourse to a judicial authority. Hague Convention, art. 21. Rather, a parent must apply to the "Central Authorit[y]" of a nation to secure enforcement of his or her rights of access.

*Id.* at 1010-11. This view of Article 21 is consistent with scholarly commentary criticizing the failure of the Hague Convention to provide a clear substantive remedy for non-custodial parents who are being denied their rights of access under the Hague Convention. *See, e.g.*, Linda Silberman, *Patching Up the Abduction Convention: A Call for a New International Protocol and a Suggestion for Amendments to ICARA*, 38 Tx. Int'l L. J. 41, 48-49 (2003) (explaining that "enforcement of access rights" is "a serious deficiency in the Convention"); Note, *Croll v. Croll and the Unfortunate Irony of the Hague Convention on the Civil Aspects of International Child Abduction: Parents with "Rights of Access" Get No Rights to Access Courts*, 30 Brook. J. Int'l L. 641 (2005). *See also Bromely*, 30 F. Supp. 2d at 861 n.5 (collecting articles).

## II.

Despite the weight of authority, I am unconvinced, based on the language of ICARA, that federal courts lack jurisdiction to adjudicate Cantor's claim. In my view, even assuming for analytical purposes that the Hague Convention itself does not afford the non-custodial parent a judicial forum to enforce his rights to access, Congress nevertheless has done so.

In determining whether a judicial forum exists for the enforcement of access rights, I would not relegate the analysis solely to the text of the Hague Convention but instead would begin with the language of ICARA's judicial remedies provision and refer to the language of the Convention to inform my understanding of ICARA. The Convention is not self-executing and therefore "do[es] not create judicially-enforceable rights unless . . . first given effect by implementing legislation." *Ridge*, 395 F.3d at 132 n.7; *see Restatement (Third) of Foreign Relations Law* § 111(3) ("Courts in the United States are bound to give effect to . . . international agreements of the United States, except that a 'non-self-executing' agreement will not be given effect as law in the absence of necessary implementation."). Congress gave the Convention domestic legal effect through ICARA, requiring the primary focus for purposes of jurisdiction to be on the statutory language:

> The issue in any legal action concerning a statute implementing a treaty is the intended meaning of the terms of the statute. The treaty has no independent significance in resolving such issues, but is relevant insofar as it may aid in the proper construction of the statute. Thus, where courts have been persuaded as to the proper interpretation of an implementing statute, that judgment has not been affected by the claim that the reading given the statute was inconsistent with the intent of the parties to the treaty.

*Hopson v. Kreps*, 622 F.2d 1375, 1380 (9th Cir. 1980); *see Restatement (Third) of Foreign Relations Law* § 111 comment h (explaining that "it is the implementing legislation, rather than the agreement itself, that is given effect as law in the United States"). If a preexisting treaty and a subsequent act of Congress cannot be construed consistently, allowing both to remain valid law, "the statute to the extent of conflict renders the treaty null" in the domestic context. *Breard v. Greene*, 523 U.S. 371, 376 (1998) (per curiam) (internal quotation marks omitted).

As I noted previously, section 11603(b) unquestionably permits — in straightforward and unambiguous language — judicial proceedings alleging the wrongful removal of a child in violation of custody rights *or* the denial of the non-custodial parent's rights of access to the

child, or both. *See* 42 U.S.C.A. § 11603(b). ICARA directs a person "seeking to initiate judicial proceedings under the Convention for the return of a child *or for arrangements for organizing or securing the effective exercise of rights of access*" to "commenc[e] a civil action . . . in any court which has jurisdiction of such action." *Id.* (emphasis added). I cannot find anything in the statutory text or its structure that would permit me to excise petitions to secure the effective exercise of access rights from the scope of the judicial remedies provision. This conclusion is underscored, in my view, by the creation of separate proof requirements for custody rights and access rights "in an action brought under subsection (b) of [the Judicial remedies] section." 42 U.S.C.A. § 11603(e)(1).[3] The unambiguous language of this section does not mandate that a claim for access rights be pursued administratively via the Central Authority. Rather, it clearly provides a judicial forum for such a claim, and "when the terms of a statute are clear and unambiguous, [a court's] inquiry ends," leaving only a "duty of enforcing the terms of the statute as Congress has drafted it." *Sigmon Coal Co. v. Apfel*, 226 F.3d 291, 305 (4th Cir. 2000), *aff'd sub nom. Barnhart v. Sigmon Coal Co.*, 534 U.S. 438 (2002).

Despite the foregoing, Cohen would look solely to the Convention to determine whether a judicial forum is available to Cantor. Cohen argues that ICARA does not add to the remedies set forth in the Hague Convention any additional means by which an aggrieved parent can enforce existing access rights. He relies on the preamble to ICARA which declares that the purpose of ICARA is "to establish procedures for the implementation of the Convention in the United

---

[3]Subsection (e) provides in relevant part:

**(e) Burdens of proof**

(1) A petitioner *in an action brought under [section 11603(b)]* shall establish by a preponderance of the evidence—

(A) in the case of an action for the return of a child, that the child has been wrongfully removed or retained . . . ; and

(B) *in the case of an action for* arrangements for organizing or securing the effective exercise of *rights of access*, that the petitioner has such rights.

42 U.S.C.A. § 11603(e)(1) (emphasis added).

States" and that "[t]he Convention and [ICARA] empower courts in the United States to determine only rights under the Convention and not the merits of any underlying child custody claims." 42 U.S.C.A. § 11601(b)(1) and (4). Because ICARA authorizes courts to adjudicate "only rights under the Convention," Cohen argues, we must refer to the language of the Convention to determine whether jurisdiction exists to adjudicate this claim. In turn, Article 21 makes no provision for the initiation of judicial proceedings to determine rights of access.

I cannot subscribe to Cohen's argument. First, it runs contrary to settled principles of statutory construction by elevating a general policy statement in the preamble over the operative portions of ICARA. "[P]reambles in statutes . . . are to be looked at at best only when . . . the enacting language is unclear or ambiguous." *White v. Investors Mgm't Corp.*, 888 F.2d 1036, 1042 (4th Cir. 1989). If "the enacting or operative parts of a statute are unambiguous, the meaning of the statute cannot be controlled by language in the preamble." *Id.* (quoting *Jurgensen v. Fairfax County, Va.*, 745 F.2d 868, 885 (4th Cir. 1984)); *see Wyoming Outdoor Council v. United States Forest Serv.*, 165 F.3d 43, 53 (D.C. Cir. 1999). The language in ICARA's Judicial remedies section is unambiguous and cannot be altered by the general policy pronouncements in the preamble.

Furthermore, the language of the preamble in any case does not preclude a judicial remedy. ICARA declares that courts are empowered "to determine only *rights* under the Convention." The Convention, however, identifies only two classes of substantive rights — custody rights and access rights. ICARA does not create new rights or expand these rights as they are defined in Article 5 of the Convention, which is made clear by the preamble's reference to the policy against disturbing the merits of an underlying order. *See* 42 U.S.C.A. § 11601(b)(4). Distinct from these substantive rights under the Convention are the judicial or administrative proceedings used to secure these rights. Congress did not, in its policy declaration upon which Cohen relies, declare that the "proceedings" or "procedures" provided by the Convention would determine whether courts have jurisdiction to adjudicate claims based on rights under the Convention. In my view, therefore, the creation of a judicial forum under ICARA for the securing of access rights is not inconsistent with the congressional declarations of purpose in the preamble. Indeed, the preamble

declares that "[t]he provisions of [ICARA] are in addition to and not in lieu of the provisions of the Convention." 42 U.S.C.A. 11601(b)(2).

Finally, Cohen argues that the unambiguous language of section 11603(b) does not permit an action in federal court because there is no substantive remedy even if a court were to determine that rights of access were being denied. Even though ICARA grants concurrent state and federal jurisdiction, *see* 42 U.S.C.A. § 11603(a), Cohen suggests that the language indicating a petition may be filed "in any court which has jurisdiction of such action" refers only to remedies and procedures available in family court, which is historically the appropriate forum for visitation matters to be decided. *See Bromley*, 30 F. Supp. 2d at 862; *Wiggill*, 262 F. Supp. 2d at 690. According to *Bromley*, federal courts lack jurisdiction because there is no *substantive* remedy under the Convention; "the proper jurisdiction for [such an] action is a state court that has the full authority to enforce and modify the original . . . decree." 30 F. Supp. 2d at 861.

The first problem with this view of section 11603(b) is that it contradicts Cohen's argument that the Convention does not afford a judicial forum to ensure the exercise of access rights. He concedes, as he must, that the language set forth in ICARA does indeed provide a judicial forum. But ICARA draws absolutely no distinction between state and federal courts in this regard. Moreover, contrary to the assumption that an action to secure access rights will force federal courts into the business of domestic law, the inquiry called for under section 11603(e) is very limited — the court need only decide whether "the petitioner has such rights" of access. 42 U.S.C.A. § 11603(e)(1)(B). Where Congress has clearly established a cause of action, the district court has the power to fashion an appropriate order that returns the parties to the status quo according to the existing rights of the parties. *See Barnes v. Gorman*, 536 U.S. 181, 189 (2002) ("[W]here legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done.") (internal quotation marks omitted). This limited inquiry does not require federal courts to plumb the depths of family law; in fact, it requires no greater degree of entanglement with family law than does the determination of whether a child has been removed in violation of existing custody rights. Such a limited inquiry is consistent with Convention

policy goals that the status quo be returned rapidly, without regard to the underlying merits, and enforced until a court of competent jurisdiction revisits the merits.

## III.

For these reasons, I would conclude that our jurisdictional inquiry is governed by the unambiguous terms of ICARA, and that under ICARA federal courts may adjudicate claims to secure the exercise of access rights. Accordingly, I respectfully dissent.